**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

2012 F.3 17  PM 3 53

STE___ ___, CLERK
___ ___ ___

| | |
|---|---|
| ROBERT L. HIGGINS as Wrongful Death Representative of the Estate of ROBERT NATHAN KENDALL HIGGINS, Deceased; and CORINA HIGGINS<br><br>Plaintiffs,<br><br>vs.<br><br>FORD MOTOR CO.;<br>TRW AUTOMOTIVE U.S., LLC;<br>TRW VEHICLE SAFETY SYSTEMS, INC.<br><br>Defendants. | Civil Action: 1 2 C V 1 7 7 F |

## COMPLAINT

The Plaintiffs, ROBERT L. HIGGINS, as Wrongful Death Representative of the Estate of ROBERT NATHAN KENDALL HIGGINS, Deceased, and CORINA HIGGINS, submit the following Complaint, stating:

## PARTIES

1.

The Decedent, ROBERT NATHAN KENDALL HIGGINS (hereinafter "*Robert Higgins*"), died intestate on September 29, 2011, from injuries suffered in a single vehicle rollover crash. At the time of his death, *Robert Higgins* was a citizen and resident of Cheyenne, Laramie County, Wyoming.

2.

At the time of his death, *Robert Higgins* was survived by the following lawful heirs: Robert L. Higgins (father); Melissa Iverson (mother); Peter A. Higgins (brother);

Corina Higgins (sister); Alex G. Higgins (brother); Makayla L. Higgins (sister); Daniel K. Higgins (brother); and Christin M. Higgins (sister).

3.

*ROBERT L. HIGGINS* is the duly appointed Wrongful Death Representative of the Estate of *Robert Higgins*, Deceased, with authority to bring the present litigation.

4.

*CORINA HIGGINS* is a citizen and resident of 11308 Little Ridge Court, Cheyenne, Wyoming.

5.

FORD MOTOR COMPANY (hereinafter "*Ford*") is a Delaware Corporation with its principal place of business at One American Road, Dearborn, Michigan. *Ford* is a global manufacturer and producer of vehicles and one of the largest corporations in the world. *Ford* is authorized to conduct business in Wyoming, owns property in Wyoming, conducts business in Wyoming and derives significant revenue from its activities in Wyoming and is therefore subject to be sued in Wyoming courts. *Ford*'s agent for service of process in Arizona is CT Corporation System, 1720 Carey Avenue, Suite 200, Cheyenne, WY 82001.

6.

Defendant TRW AUTOMOTIVE U.S., LLC (hereinafter "*TRW Automotive*") is a Delaware limited liability company with its principal place of business at 12001 Tech Center Drive, Livonia, Michigan. *TRW Automotive* is a citizen of a state other than Wyoming, but conducts business in Wyoming, provides consumer products and safety devices for use in Wyoming, and derives substantial economic profits from this state. As such, *TRW Automotive* is subject to personal jurisdiction in this state. *TRW*

*Automotive's* may be served with process at 12001 Tech Center Drive, Livonia, Michigan.

7.

Defendant TRW VEHICLE SAFETY SYSTEMS, INC. (hereinafter "*TRW VSSI*") is a Delaware corporation with its principal place of business located in Washington, Michigan. *TRW VSSI* manufactures and supplies vehicle safety systems, including those in the vehicle in question. The company is headquartered in Washington, Michigan, and has facilities in Mesa, Arizona as well as Romeo, Michigan. *TRW VSSI* operates as a subsidiary of *TRW Automotive Holdings Corp.*, 4505 West 26 Mile Road, Washington, MI 48094. *TRW VSSI* is a citizen of a state other than Wyoming, but conducts business in Wyoming, provides consumer safety devices in vehicles in Wyoming, and derives substantial economic profits from this state. As such, *TRW VSSI* is subject to personal jurisdiction in Wyoming. *TRW VSSI* may be served with process through its agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808. During all times relevant to the events surrounding the present complaint, *Ford* and *TRW VSSI* had agreements in place, both as partners and joint venturers, that included, among other things, the following:

- *Ford* and *TRW VSSI* entered into a certain "Service Agreement" whereby *Ford* contracted with *TRW VSSI* to provide a major portion of the engineering effort associated with providing "leading edge technology" for the safety systems of Ford vehicles, including the Explorer.

- *TRW VSSI* was contractually obligated to provide *Ford* safety systems, including safety belts, that incorporated "leading edge technology" and that met *Ford's* design and performance requirements, including reasonably safe performance in rollover-type events.

- *TRW VSSI* was also contractually obligated to review *Ford's* design and performance specifications, make recommendations for modifications and improvements to the specifications where needed in order to optimize performance and to ensure leading edge technology was enhanced and that "due care" issues were addressed outside of those design and performance specifications, including testing of the systems.

- As part of the agreements between *Ford* and *TRW VSSI, TRW VSSI* was contractually obligated to sell "substantially all" of *Ford's* North America requirements for safety restraints (safety belts) to *Ford* pursuant to purchase and supply agreements.

- The contractual agreements between *Ford* and *TRW VSSI* specifically included a requirement that *TRW VSSI* supply a level of engineering effort beyond that normally performed by a supplier of component parts, including providing *Ford* with advice, recommendations, upgrades, modifications, and safety equipment that provided the ultimate consumer with "leading edge technology" for safety-related issues, all of which was documented in an engineering services agreement between the companies.

- As a consequence of the foregoing, *Ford* agreed to loan *TRW VSSI* $26,800,000.00 in exchange for *TRW VSSI's* convertible subordinated note, which was convertible into stock in *TRW VSSI*. *Ford* also loaned *TRW VSSI* $10,700,000.00 under fundamentally the same terms.

- The intent of the foregoing agreements was for *Ford* to help *TRW VSSI* achieve superior financial performance while operating a joint venture and/or partnership with *Ford*. As such, they acted as Agents for one another in the performance of their obligations.

8.

At all times relevant to this Complaint, the *TRW* Defendants (both *TRW Automotive* and *TRW VSSI*) were the suppliers of safety components under contract with *Ford*, including supplying the safety belts offered by *Ford* in the subject vehicle. The *TRW Defendants* and *Ford* were involved in a partnership and joint venture with respect to the safety components that failed and each owed consumers a separate duty to carry out the joint venture or agency relationship in a manner that did not unreasonably result in injury and death to consumers. As such, they are both responsible for the injuries resulting from this crash, including the death of the Plaintiffs' decedent.

## JURISDICTION AND VENUE

### 9.

This civil action is brought pursuant to Chapter 38 (Wrongful Death) under Wyoming law under theories of strict liability, negligence, breach of implied warranty, and wrongful death, including a claim for infliction of emotional distress.

### 10.

The Court has jurisdiction over the subject matter of this action based on diversity of citizenship, and because it is a claim for Wrongful Death and the amount in controversy exceeds the amount necessary to establish jurisdiction.

### 11.

Venue is proper because the crash occurred in Laramie County; the Plaintiff's Decedent and Plaintiff resided in this County.

## FACTUAL BACKGROUND

### 12.

The defective vehicle which forms the basis for this suit is a 2000 model Ford Explorer designed, tested, manufactured, marketed, assembled, and/or distributed by *Ford.*

### 13.

The rollover crash that forms the basis for this litigation occurred on September 29, 2011, on I-25 SVRD 0085, highway section 3, milepost 24 in Laramie County, Wyoming.

### 14.

The rollover crash occurred while the defective vehicle was being driven northbound.  During the course of the trip, the driver was forced to take evasive

action. During the maneuver, the defective Explorer slid sideways and rolled over. Robert Higgins was killed during the rollover despite being properly seat belted.

## COUNT 1
## STRICT LIABILITY
## Ford/TRW Automotive/TRW VSSI

15.

The Explorer is defective and unreasonably dangerous by design when used as designed, developed, tested, assembled, manufactured, marketed and distributed by *Ford* and the *TRW* Defendants. The inherent defects in the design were present at the time the vehicle was manufactured, marketed, and distributed. The defects in the vehicle were a proximate and producing cause of the injuries, death and damages. At all times relevant to the Complaint, *Ford* and the *TRW* Defendants were in the business of designing, manufacturing, marketing, or otherwise distributing automobiles, including component parts for safety. The defective nature of the design of the Explorer included defects in design; stability; handling; marketing; instructions; warning; crashworthiness; rollover resistance and controllability. The defective nature of the vehicle includes the following:

- The Explorer is defective in that the design of the "package", which includes the combination of track width and vertical center of gravity height, creates an unreasonable risk of rollover given the uses for which the vehicle was marketed

- The Explorer is defective from a handling standpoint because it has an unreasonable tendency to get sideways in emergency situations and does not remain controllable under all operating conditions as required by *Ford* guidelines, including the tendency to oversteer and skate;

- The Explorer is unreasonably dangerous from a stability standpoint because it rolls over instead of sliding when loss of directional control occurs on relatively flat level surfaces during foreseeable steering maneuvers;

- The combination of the foregoing creates an extreme risk of rollover that is both beyond the reasonable expectations of consumers and creates a risk that far outweighs any benefit associated with the design given the uses for which the vehicle was marketed;

- The vehicle is unreasonably dangerous because it performs in an unsafe manner when operated in foreseeable emergency situations and maneuvers, which *Ford* had both

actual and constructive knowledge would lead to rollover crashes. *Ford*'s knowledge included both actual knowledge based on its test history with trucks; its research and knowledge of rollover in foreseeable turning maneuvers; and given its corporate history with respect to trucks designs;

- The risk of operating the vehicle as designed outweighed any benefits associated with the design and *Ford* knew of these risks; knew that the risk, if it materialized, would lead to rollover crashes and severe injuries; and knew that rollover crashes were particularly dangerous;

- *Ford* knew that this type vehicle – a truck – was not reasonably safe for inexperienced and untrained drivers and knew that the vehicle was not sufficiently capable of maneuvering in emergency conditions that consumers would face on freeways at freeway speeds;

- The Explorer was likewise unreasonably dangerous from a crash protection standpoint in that the vehicle was not equipped with an occupant protection system – roof, safety belt system, and anti-ejection design – that would effectively provide reasonable protection in the event of a rollover. *Ford* knew that the belt system would not effectively and reasonably restrain occupants involved in freeway-speed rollovers and *Ford* knew of the risk that the roof was not sufficiently strong to provide a safety cage for the occupants. Despite knowledge of these risks, and the availability of alternative safer designs, *Ford* intentionally marketed the vehicle to consumers for use as a freeway, passenger-carrying vehicle, and intentionally led consumers to believe that it was safe, stable, and would provide state of the art protection to occupants.

- *Ford* knew that the vehicle was not sufficiently equipped with restraints that were designed to perform safely, despite the fact that *Ford* marketed the vehicle as a family vehicle.

- *Ford* had both actual and constructive knowledge of the existence of safer, alternative designs from both a stability and crash protection standpoint, and that the alternatives were technologically feasible and available;

- *Ford* willfully, wantonly, and consciously marketed the Explorer for the aforementioned uses with full knowledge of the risks inherent in the vehicle design, yet misled consumers and withheld critical information about the unsafe nature of the vehicle in conscious disregard for the public.

The defective nature of the vehicle was a proximate and producing cause of the accident, injuries, death of *Robert Higgins*, and damages suffered by the Plaintiffs. *Ford* and the *TRW* Defendants are therefore strictly liable for supplying a defective and unreasonably dangerous product that resulted in personal injury, death and property damage.

A safer alternative design was economically and technologically feasible at the time the product left the control of the Defendants, both with respect to rollover propensity and crash protection.

## COUNT 2
## NEGLIGENCE
## Ford Motor Company

16.

At all times relevant this Complaint, *Ford* was in the business of supplying motor vehicles for use on the public roadways. *Ford* held itself out to the public as having specialized knowledge in the industry, especially with respect to trucks. As such, *Ford* owed consumers, including the Plaintiffs, a duty to use reasonable care in the design, manufacture, preparation, testing, instructing, and warnings surrounding the Explorer. *Ford* violated this duty by negligently supplying a vehicle that was defective. The negligent acts include but are not limited to the following acts or omissions:

- Negligently designing the vehicle from a handling and stability standpoint given the manner in which it was marketed;

- Negligently designing the vehicle with poor rollover resistance given the manner in which it was marketed;

- Negligently designing and testing the vehicle from an occupant protection standpoint;

- Negligently testing of the vehicle from a handling and stability standpoint;

- Negligently failing to test the vehicle to ensure the design provides reasonable occupant protection in the event of a rollover;

- Failing to adequately train and assist dealers in the dangers associated with the vehicle when used as marketed;

- Failing to disclose known defects, dangers, and problems to both dealers and the public;

- Negligently marketing the vehicle as a safe and stable passenger vehicle given the uses for which it was marketed;

- Failure to meet or exceed internal corporate guidelines;

- Negligently advertising the vehicle as safe and stable family vehicle;

- Failing to inform the consumer, including the Plaintiffs and the decedent, of the information *Ford* knew about rollover risk in trucks, and specifically the Explorer, thus depriving the Plaintiffs of the right to make a conscious and free choice, and also in failing to disclose known problems in foreign countries in an effort to conceal problems that *Ford* knew about the Explorer from U.S. consumers, including the Plaintiffs;

- Failing to comply with the state of the art in the automotive industry insofar as providing reasonable occupant protection in a rollover, including the use of roll sensing, pretensioners, side air bag and curtain technology, and integrated seating technology;

- Failing to comply with applicable and necessary Federal Motor Vehicle Safety Standards with respect to occupant protection and/or failing to test appropriately to ensure compliance;

- Failing to notify consumers, as required by law, that a defect exists in the vehicle that relates to public safety;

- Failing to recall the vehicle or; alternatively, retrofitting the vehicle to enhance safety.

These acts of negligence were a proximate and producing cause of the accident, injuries, and damages suffered by the Plaintiff's Decedent, and the severe emotional distress that Plaintiff Corina Higgins suffered in watching what transpired as well as her own physical injuries. The dangers referenced earlier were reasonably foreseeable or scientifically discoverable at the time of exposure.

### COUNT 3
### NEGLIGENCE
### TRW Automotive/TRW VSSI

17.

Plaintiffs incorporate all previous paragraphs as if fully reproduced herein.

18.

At all times relevant this Complaint, *TRW Automotive and TRW VSSI* were in the business of supplying safety belt systems to automakers including but not limited to Ford, for inclusion in sport utility vehicles, trucks, and cars, specifically including the Ford Explorer, for use on the public roadways. *TRW Automotive and TRW VSSI* held

themselves out to the public and to auto makers as having specialized knowledge in the industry, especially with respect to safety belt systems. As such, *TRW Automotive and TRW VSSI* owed consumers, including the Plaintiffs, a duty to use reasonable care in the design, manufacture, preparation, testing, instructing, and warnings surrounding the safety belt system which was provided to Ford for inclusion in the Explorer. *TRW Automotive and TRW VSSI* violated this duty by negligently supplying a safety belt system to *Ford,* especially in light of the knowledge that *TRW Automotive and TRW VSSI* had or should have had relative to rollovers of SUV's and trucks, and the types of injuries being sustained by belted occupants in those rollovers, particularly those involving the Ford Explorer. The negligent acts include, but are not limited to, the following acts or omissions, each taken in the context of what the *TRW* Defendants knew or should reasonably have known of rollover related injuries of belted occupants in sport utility vehicles;

- Negligently failing to design the safety belt system for inclusion in the Explorer which kept the occupants of the vehicles coupled to their seats, safely inside of the vehicle, and safe from suffering serious/fatal injuries from contact with the interior portions of the vehicle during a rollover;

- Negligently failing to test the safety belt system for inclusion in the Explorer to ensure that it would keep the occupants of the vehicles coupled to their seats, safely inside of the vehicle, and safe from suffering serious/fatal injuries from contact with the interior portions of the vehicle during a rollover;

- Negligently failing to manufacture the safety belt system for inclusion in the Explorer to ensure that it would keep the occupants of the vehicles coupled to their seats, safely inside of the vehicle, and safe from suffering serious/fatal injuries from contact with the interior portions of the vehicle during a rollover;

- Failing to incorporate feasible safer designs into the safety belt system which would have kept the occupants of the Explorer coupled to their seats, safely inside of the vehicle, and safe from suffering serious/fatal injuries from contact with the interior portions of the vehicle during a rollover; and

- Failing to warn the occupants of the Explorer that the safety belt system in the Explorer would not keep them coupled to their seats, safely inside of the vehicle, and safe from suffering serious/fatal injuries from contact with the interior portions of the vehicle during a rollover

- Negligently carrying out its duties and responsibilities as part of the partnership and/or joint venture with *Ford* to ensure that state of the art safety features were included in the Explorer, and to ensure that the design and performance specifications were appropriate given the risks involved in the design of the Explorer.

The negligence of *TRW Automotive and TRW VSSI* as described above, proximately caused the Plaintiff's decedent's death. Defendants are liable for all damages resulting therefrom.

**COUNT 4**
**BREACH OF WARRANTY**
**Ford/TRW Automotive/TRW VSSI**

19.

At all times relevant to the complaint, *Ford* and the *TRW* Defendants were "merchants" in the business of supplying "goods" and/or "products" sold for consumer usage. As such, *Ford* and the *TRW* Defendants breached the warranties of merchantability and fitness for a particular purpose in that the Explorer was not fit for ordinary use or for the intended use for which it was purchased. These breaches of warranty proximately resulted in the accident, injuries, death of Plaintiff's parents and damages suffered by the Plaintiffs. The product was unfit as previously described in the foregoing accounts. Notice has been provided as required by law.

**COUNT 5**
**WRONGFUL DEATH**

20.

In accordance with the Wyoming Wrongful Death Act, the Plaintiff, as the duly appointed Wrongful Death Representative of the Estate of *Robert Higgins,* Deceased, seeks damages against *Ford* and the *TRW* Defendants for the wrongful death of *Robert Higgins*, including the full value of the life of the decedent, both economic and non-economic.

## DAMAGES

### 21.

As a proximate result of the conduct of *Ford,* and the *TRW* Defendants, as fully set forth herein, the Plaintiffs have suffered injuries and damages. The Plaintiffs seek monetary damages from *Ford* and the *TRW* Defendants, jointly and severally, to compensate for the following elements of damage:

- Pain and suffering to Corina Higgins;
- Past and future medical expenses to Corina Higgins;
- Permanent injury to Corina Higgins;
- Past and future lost earnings to Corina Higgins;
- Several emotional distress to Corina Higgins;
- Pain and suffering;
- Loss of Robert Higgins's care, comfort, companionship, advice and society;
- Property damage;
- Funeral expenses;
- All other available relief under Wyoming law, including, costs and fees.

  The Plaintiffs reserve the right to prove the amount of damages at trial.

### PUNITIVE/EXEMPLARY DAMAGES

### 22.

In addition to compensatory damages, the Plaintiffs are seeking punitive damages from *Ford* and the *TRW* Defendants because their conduct constitutes reckless, grossly negligent, willful, wanton, malicious behavior that needs to be punished in order to deter others from participating in similar future misconduct. The acts set forth in this complaint were steps taken by *Ford* and the *TRW* Defendants with knowledge of the associated risks to consumers. *Ford* and the *TRW* Defendants

took the steps set forth herein in conscious disregard for the potential consequences and under circumstances for which a jury could determine that *Ford* and the *TRW* Defendants willfully, wantonly, recklessly, maliciously, and consciously indifferent to the consequences endangered human life. *Ford* and the *TRW* Defendants have been sued for precisely the same conduct many times. *Ford* and the *TRW* Defendants are fully aware of the design decisions, and *Ford* and the *TRW* Defendants deserve to be punished in a civil forum for the malicious misconduct. The amount of punitive damages to be awarded is within the discretion of the jury.

23.

Plaintiffs reserve the right to amend the complaint by adding additional counts as discovery continues.

24.

Plaintiffs requests a trial by jury on all issues.

WHEREFORE, Plaintiffs pray for judgment on their complaint against *Ford* and the *TRW* Defendants and for any and all other just relief this court may deem appropriate.

DATED:  August 17, 2012.

Respectfully submitted,

James E. Fitzgerald (5-1460)
THE FITZGERALD LAW FIRM
2108 Warren Ave.
Cheyenne, WY 82001
Phone: (307) 634-4000
Fax: (307) 635-2391
Email: jim@fitzgeraldlaw.com

TURNER & ASSOCIATES, P.A.
Tab Turner
Arkansas Bar No. 85158
Attorney for Plaintiffs
4705 Somers Avenue, Suite 100
North Little Rock, Arkansas 72116
Phone: (501) 791-2277
Fax: (501) 791-1251
Email: tab@tturner.com

(*Pro Hac Vice* pending)

Attorneys for Plaintiffs